Ranney, J.
The main question arising in this case is, was the action of the court of common pleas erroneous? It is one of considerable importance and some difficulty. We have not been favored with an argument on either side, and are obliged to decide from the best lights that a limited examination of the books can give us.
The act upon which this indictment is predicated (Swan’s Stat. 230, sec. 7) provides, “ That if any married person, having a husband or wife living, shall marry any other person,” every such person, on conviction, shall be inrprisoned in the penitentiary not more than seven nor less than one year. The first indispensable step to be taken by the prosecution is, to establish the fact that the person prosecuted is a “ married person,” and has “ a husband or wife living.” To do this, a valid marriage in fact must be shown. The law will not presume it as it will in civil cases. Arch. Crim. Pl. 476.
The question arising upon this record may be thus stated: Can a male person under the age of eighteen, or a female person under the age of-fourteen years, contract a valid marriage in this state? To answer this question, we must first resort to our own statute laws. The first section of the “ act regulating marriages ” (Swan’s Stat. 582),, passed January 6,1824, provides, “ That male persons of the ago of eighteen years, and female persons of the age of fourteen years, not nearer of kin than first cousins, and not having a husband or wife living, *may be joined in marriage.” The last part of the section provides, that between these ages and the ages of twenty-one and eighteen, respectively, the consent of the parents or guardians shall first be obtained. Although the marriage relation has its foundation in nature, and is indispensable to the moral improvement and happiness of mankind, a great variety is found to exist in the municipal regulations of civilized states as to the age at which it may be lawfully entered into. Nature has fixed no precise period, and each state must for itself, by fixed and reasonable rules, regulate the matter with regard to its own peculiar circumstances. The common law, as is well known, borrowed from the Roman law, fixed the age at fourteen in males and twelve *4 in females. The code Napoleon fixed it at eighteen in males and fifteen in females. In some of the states of this Union the common-law rule prevails, and in others the matter is regulated by statute. In Massachusetts and Illinois it is fixed at seventeen in males and fourteen in females ; but marriages contracted below that age ara rendered valid if followed by voluntary cohabitation. Michigan and Indiana follow the provisions of our own law. This diversity of regulation is not in all- cases accidental. Nature herself in many cases demands such variation; An age that would be right and proper in Spain and Italy would not be adapted to Norway and Sweden. A state of society and a system of policy that makes marriage in many cases a convenient means of controlling estates,, and confining property in particular channels, as in Great Britain, is best subserved by allowing marriages at a period of life when parental influence and authority is not likely to be overcome by the strong current of affection and independence incident to maturer years. But such a regulation would be poorly adapted to a state of society like our own, where no such policy is to be promoted, where fidelity to the marriage vow has all the sanctity of a religious sentiment, and where all experience has shown that the blessings of the marriage relation can only be realized when entered into with the utmost freedom of choice, and between persons of matured judgment and discretion.
^Although our statute differs from the common law in fixing the age at which this contract can be made, still, as it is entirely silent as to the effect of an attempt to enter into it before the period presented, we must resort to the exposition of the common law upon that point; and judicial determinations and the opinions of jurists under that system are strictly applicable. Blackstone, in his Commentaries (vol. 1, p. 433), has treated this subject with his usual clearness and force. In discussing the question as to how marriages may be contracted, and after remarking that the law regards them in no other light than as a civil contract, and that all persons willing and able to contract may enter into them, he proceeds to say that, “In general all persons are able to contract themselves in marriage, unless they labor under some particular disabilities and incapacities.” These disabilities are of two sorts, canonical and civil. In relation to the first, he says, “These in our land only make the marriage voidable, and not ipso facto void, until sentence of nullity be obtained.” In relation *5 to the last, he remarks, “ These civil disabilities make the contract void ab initio, and not merely voidable; not that they dissolve a contract already formed, but they render the parties incapable of forming any contract at all; they do not put asunder those who are joined together, but they previously hinder the junction. And if any persons, under these legal incapacities, come together, it is a meretricious and not a matrimonial union.”
He then enumerates three legal disabilities that make the contract void. The first is prior marriage. He then proceeds to say, “ The next legal disability is want of age. This is sufficient to avoid all other contracts, on account of the imbecility of judgment in the parties contracting ; a fortiori, therefore, it ought to avoid this the most important contract of any. Therefore, if a boy under fourteen, or a girl under twelve years of age, marries, this marriage is only inchoate and imperfect, and when either of them comes to the age of consent aforesaid, they may disagree and declare the marriage void without any divorce or sentence in the ■spiritual court. *“Although,” he continues to say, “if at the age of consent they agree to continue together, they need not be married again.”
Chancellor Kent (2 Com. 78) states substantially the same. He says, “No persons are capable of binding themselves in marriage until they have arrived at the age of consent. Marriage before that age is voidable at the election of either party, on arriving at the age of consent, if either of the parties be under that age when the contract is made.”
Judge Reeve (Domestic Rel. 200), in speaking of such contracts, says, “ Such a contract, I apprehend, is void, upon the principle that it is a contract against sound policy and contra bonos mores.” Wharton, in his treatise on Criminal Law, 555, says, “If a boy under fourteen, or a girl under twelve, contract matrimony, it is void, unless both husband and wife consent to confirm the marriage after the minor arrives at the age of consent.” See also Poynter on Marriage and Divorce, 154; Arch. Crim. Plead. 477; Co. Lit. 79; Rex v. Gordon, Eng. Crown Cases, 48.
We think these authorities very conclusively show that the contract of marriage when entered into by a person under the age fixed by law, is void, as well for the want of capacity in the infant to make it, as being opposed to sound policy and the positive requirements of the land. And while it is possible that an occasional *6 case may arise, in which precocious villainy may escape merited punishment, we should remember, on the other hand, that it might as often happen that a different holding would place inexperienced and thoughtless youth irretrievably in the power of cunning, crafty, and interested persons of maturer years. Por our law furnishes no method of obtaining a judicial sentence for annulling such a marriage; unless the parties have the means of escape in their own hands, none exist. To admit the right, and deny the power to make it available, would amount to little less than absurdity. The court below refused to charge that such a marriage would be void until confirmed by cohabitation after arriving at the age of consent. In this we think they erred. They did charge that unless *he dissented from the contract on arriving at such age, and gave the wife notice of the fact, he could not avoid it. "W e think acts of assent after age must be shown to bind him. They did charge that the fact that he had left the first wife, and married another, with whom he was cohabiting at the time of arriving at the age of consent, would not amount to such dissent, while we hold that if such express dissent were required, such acts would be sufficient.
The judgment is reversed, and the cause remanded for a new trial.

. In Co. Lit. 79, b., it is said: “ The time of agreement or disagreement when they marrie infra annos nubiles, is for the woman at twelve or after, and for the man at fourteene or after, and there need no new marriage if they so agree; but disagree they oan not before the said ages, and then they may disagree and marrie againe to others without any divorce; and if they once after give consent, they can never disagree after.” E. v. Gordon, E. & E. 48.

. Evidence of two marriages, the former of which is void, will not sustain an indictment for bigamy. 3 "West. Law J. 134; 5 West. Law J. 376.
On an indictment for bigamy, the admissionsof the defendant as to a prior marriage may be given in evidence to prove the fact of such marriage. "Wolverton v. Ohio, 16 Ohio, 173.
The common law age of consent is changed by our statute to the age of eighteen in males and fourteen in females. Stat. 582.